UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. 12-50166-01-KES |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | MEMORANDUM OPINION AND ORDER DENYING MOTION FOR A |
| RICHARD HARRIS BEAR RUNNER, | ) ) | MISTRIAL OR NEW TRIAL |
| Defendant. | ) | |

Defendant, Richard Harris Bear Runner, moves for a mistrial and a new trial based on alleged prosecutorial misconduct. Bear Runner claims he was denied a fair trial because the prosecutor engaged in improper vouching and burden shifting during examination of a witness and in rebuttal closing argument. Docket 53. The government resists this motion and argues that the prosecutor's actions were not improper, but even if they were, Bear Runner cannot establish that he was prejudiced when the cumulative effect of the prosecutor's conduct was minimal, the government offered substantial evidence of Bear Runner's guilt, and the court's instructions were curative of any prejudice. Docket 63. For the following reasons, the motion is denied.

**BACKGROUND**

On November 19, 2012, Bear Runner was indicted on one count of assault with a dangerous weapon and one count of assault resulting in serious bodily injury to Christine White Eyes. Docket 2. A jury trial was held on the charges beginning May 7, 2013. During the prosecution's rebuttal to Bear Runner's closing statement, the defense attorney objected to a number of the prosecutor's

comments and moved for a mistrial. The court reserved ruling on Bear Runner's motion for a mistrial pending the jury's verdict. On May 8, 2013, the jury found Bear Runner guilty of both counts. Docket 47. Subsequently, Bear Runner renewed his motion for a mistrial and asked the court to grant him a new trial. Docket 53. That motion is now before the court.

## STANDARD OF REVIEW

According to Rule 33 of the Federal Rules of Criminal Procedure, a court can vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. If there is a motion for a new trial "grounded on any reason other than newly discovered evidence [it] must be filed within 14 days after the verdict or finding of guilty." *Id.* The district court has broad discretion on a Rule 33 motion and "it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict[.]" *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (citation omitted). While the court has more discretion under Rule 33 than Rule 29, "[u]nless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.* (citation omitted).

## DISCUSSION

Bear Runner argues that the government engaged in two types of improper conduct during his trial, vouching and burden shifting. The first question is whether the prosecutor's conduct or remarks were improper. If the court finds the prosecutor did engage in misconduct, then the second question

2

is whether the misconduct so affected Bear Runner's substantial rights that he was deprived of a fair trial.

The Eighth Circuit Court of Appeals has stated that "[i]t is within the discretion of the district judge to grant or deny a motion for mistrial[.]" *United States v. Encee*, 256 F.3d 852, 854 (8th Cir. 2001) (citation omitted). "A trial court is vested with 'broad discretion in controlling closing arguments and we will reverse only on a showing of abuse of discretion.'" *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011) (quoting *United States v. Miller*, 621 F.3d 723, 729 (8th Cir. 2010)). When a defendant timely objects on the basis of prosecutorial misconduct, the defendant is entitled to a reversal if he or she can show: "(1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct affected the defendant's substantial rights so as to deprive him of a fair trial." *Id.* (quotation and citation omitted).

During closing arguments the role of the prosecutor "is to assist the jury in analyzing, evaluating, and applying the evidence. Arguments that transcend such boundaries are improper." *United States v. Beckman*, 222 F.3d 512, 527 (8th Cir. 2000) (citations omitted). Thus, a prosecutor is confined to commenting on the evidence and any reasonable inferences that could be drawn from that evidence. *United States v. White*, 241 F.3d 1015, 1023 (8th Cir. 2001) (citation omitted). During trial the prosecutor cannot express his or her own personal beliefs about the veracity or credibility of a witness. *Id.* (citations omitted). The prosecutor may, however, express his or her interpretation of the evidence or use "colorful pejoratives." *Id.* (citation omitted).

3

## I. Improper Conduct

### A. Vouching

Vouching occurs if the prosecutor: "(1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness." *United States v. McClellon*, 578 F.3d 846, 858 (8th Cir. 2009) (quotation and citation omitted).

#### 1. Improper Questions

One of the main government witnesses in this case was the lead case agent for the Bureau of Indian Affairs, John Long. On direct examination, the prosecutor asked Long a number of questions about the means and manner of his investigation into the assault of White Eyes that occurred on the Pine Ridge Indian Reservation on September 6, 2012. Much of the dispute in this motion is centered around Long's questioning of Alex Thunder Hawk, one of White Eyes's neighbors who lived near the scene of her attack, and who was not called as a witness at trial. On direct examination, the prosecutor asked Long if he had obtained "any meaningful information [from Thunder Hawk] that assisted in [his] investigation[.]" Docket 61 at 8. Long responded, "No." *Id.*

Following defense counsel's cross-examination of Long, the prosecutor and Long had the following exchange during redirect examination:

> Q: Now, I asked you about – and I apologize, because I wasn't specific enough, but I think I was pretty clear. I was asking you about this first interview with Alex Thunder Hawk, Jr., when I was talking on direct, and you answered that you

Q: didn't receive any meaningful information from that interview; is that fair?

A: Yes.

Q: During that first interview with Alex Thunder Hawk, Jr., did he tell you anything about seeing a skinny guy with a stick?

A: No. I don't believe so.

Q: Are you experienced in working with people who sometimes aren't completely honest with you?

A: Yes.

Q: Was there anything that concerned you when you interviewed Alex Thunder Hawk about whether he was telling you the truth about what happened?

A: Well, when I interviewed Alex that night – or he initially told me that when he was approached by the boys, you know, they were intoxicated or they had been drinking, and he told them to leave or he was going to call the cops, but –

Q. Let me stop you there. You referred to "the boys." Who are you referring to there?

A: Ryan High Bear and Herman Dubray.

Q: And you had already interviewed Ryan High Bear at that point?

A: I already interviewed Ryan.

Q: The day this happened?

A: Yes . . .

Q: And did you see any signs of intoxication with Ryan High Bear?

A: No.

Q: Could you smell even the faintest smell of alcohol on his breath?

A: No.

Q: And so when Alex told you that these two were drunk, did you believe him?

A: No, I didn't.

Docket 61 at 15-17.

Defense counsel objected to this last question and moved to strike the answer. The court sustained the objection and asked the jury to disregard Long's answer. Soon after, the prosecutor asked Long if he had any reason to disbelieve that "the person . . . identified" as the attacker by White Eyes was not the person who committed the crime. Docket 61 at 20. Defense counsel objected on the basis of vouching, and the court sustained the objection.

Now, Bear Runner claims that the prosecutor improperly attempted to have Long testify about the veracity of other witnesses. While "[a]n improper question by government counsel may constitute prosecutorial misconduct[,]" the court finds that neither incident described above rises to the level of improper prosecutorial misconduct. *United States v. Guerra*, 113 F.3d 809, 815 (8th Cir. 1997) (citation omitted). Typically, prosecutorial misconduct occurs when the prosecutor herself attempts to bolster or express a personal opinion about the credibility of a witness, implies that certain evidence is truthful, or refers to evidence that is unavailable to the jury. None of these examples are present here. While it was incorrect for the prosecutor to attempt to have one witness address the credibility of another witness, this does not rise to the level of

6

prosecutorial misconduct. And as the court will discuss in greater detail below, even if these comments were improper, they were not prejudicial.

### 2. Comments Made During Rebuttal Argument

Bear Runner also argues that the prosecutor engaged in misconduct when she vouched for the credibility of the government's case agent by referring to facts not in evidence in her rebuttal argument.

In defense counsel's closing argument he made the following comments about Thunder Hawk: "And Agent Long interviewed him, and you know he asked him was it Richard Bear Runner, but they didn't bring Alex Thunder [Hawk] to court, did they? Because it wasn't meaningful to their prosecution." Docket 49 at 45. Defense counsel continued, "Well, they talked to Alex Thunder [Hawk], and he didn't identify Richard Bear Runner. That's reasonable doubt." *Id.* at 46.

In rebuttal to defense counsel's closing statement, the prosecutor said:

> Ladies and gentlemen, I would also like to talk to you a little bit about this person named Alex Fire Thunder (sic). You didn't hear from him. The People – the United States didn't put him up there, because when he was originally contacted, he told Agent John Long something totally different that he did. And we have a duty to put on evidence that we believe.

Docket 49 at 57-58. Defense counsel objected on the basis of vouching, and the court sustained the objection. The prosecutor continued, "We have a duty to make sure that we don't put people on the stand that could potentially commit a crime." *Id.* at 58. Defense counsel objected again, and the court sustained the objection. Defense counsel then moved for a mistrial.

7

"In closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case." *United States v. Flynn*, 196 F.3d 927, 930 (8th Cir. 1999) (citations omitted). In cases like this, where the prosecutor makes her comments in response to an attack by the defense, the court is "called upon to determine whether the prosecutor's comments were a fair response." *Id.*

The court finds that even if the prosecutor was responding to an attack of the case during her first statements, the prosecutor's comments were improper and were not a fair response. Specifically, the prosecutor's statements were improper because she implied both what she believed to be the credibility of a witness and that the veracity of Long's testimony was supported by facts outside the record.

On direct examination, Long testified that in Thunder Hawk's first interview he did not state that he saw a skinny guy with a stick and Thunder Hawk did not provide any information that was meaningful to his investigation. On cross-examination, Long said Thunder Hawk later told him that he saw a skinny guy with a stick run by him, High Bear and Dubray came up and asked Thunder Hawk if he had seen a guy in a red shirt, and both High Bear and Dubray smelled like alcohol. On redirect examination, Long admitted that he had some concerns about the truthfulness of Thunder Hawk's story because he said that High Bear and Dubray had been drinking. That testimony did not align with Long's perceptions of High Bear during his interview on the night of the assault. This was the evidence before the jury at the close of evidence.

The prosecutor's statement that "we have a duty to put on evidence that we believe" expresses a personal opinion about witness credibility and comments on evidence or knowledge the jury did not have. *See Roberts v. Delo*, 205 F.3d 349, 351 (8th Cir. 2000) ("A prosecutor may not express an opinion implying knowledge of facts unavailable to the jury."). Moreover, testimony that Long had concerns about a portion of the truthfulness of Thunder Hawk's story or that Thunder Hawk mentioned things in the second interview that he did not say in his first interview is not evidence that "when he was originally contacted, [Thunder Hawk] told Agent John Long something totally different that he did." Accordingly, the prosecutor's comments amount to improper vouching, and the court concludes this was not a fair response.

The prosecutor's comment immediately following this statement was improper for similar reasons. The assertion that "[w]e have a duty to make sure that we don't put people on the stand that could potentially commit a crime[,]" is implying that Thunder Hawk would have committed perjury on the stand. That statement was the prosecutor's personal opinion about the credibility of the witness and was based on evidence that was not before the jury. It was again the prosecutor's attempt to bolster the testimony of Long or to insinuate that Thunder Hawk would not have been truthful because he changed his story in the past. This statement was not a fair response to defense counsel's attack.

Finally, Bear Runner asserts the prosecutor's reference to "other cases" in her rebuttal argument was improper vouching. In her rebuttal, the prosecutor said, "[w]ith regards to John Long and things that didn't happen, ladies and

9

gentlemen, in every case something more could have been done. In every case. But some cases just don't lend themselves to it."[1] Docket 49 at 62. Defense counsel objected, and the court overruled the objection.

The court finds that these statements by the prosecutor were not improper. Defense counsel previously raised a number of questions and arguments about why Long did not collect DNA evidence, take a buccal swab, conduct specific interviews or a photo lineup, or attempt to locate any other evidence. The prosecutor's comments during rebuttal were to explain why this type of evidence was not gathered, something that Long specifically testified about. For example, Long testified that a photo lineup was not conducted because the victim identified the attacker, and he did not collect DNA evidence because there would not have been any. Docket 61 at 19. Thus, the prosecutor's comments did not improperly comment on evidence that was unavailable to the jury or otherwise bolster Long's testimony; rather, the prosecutor was attempting to help the jury analyze and interpret the evidence before it.

---

[1] Bear Runner argues that this statement was similar to the statement made in *United States v. Boyce*, 797 F.2d 691, 694 (8th Cir. 1986), where the court concluded the prosecutor's statements about his involvement with "other cases" and the police officer's conduct were deemed improper. The comment made in *Boyce* is far afield from the situation here. In *Boyce*, the court concluded the prosecutor was attempting to convey to the jury that he had knowledge outside of the evidence presented at trial that could confirm the police officer's current testimony. *Id.* The statements in this case do not rise to that level and are based on the evidence admitted during the trial.

## B. Burden Shifting

Bear Runner alleges that it was further misconduct for the prosecutor to shift the burden of proof to the defense through additional comments in her rebuttal argument. Prior to the prosecutor's rebuttal, the defense attorney attacked portions of the government's case, in particular, its decision not to call other witnesses of the assault or neighbors who were in the area at the time of the assault. The specific statement was:

> What did those neighbors say? Did they say that it was Richard? Well, they [the government] didn't bring them here. The one person that they spoke to who wasn't related to Christine was Alex Thunder [Hawk] . . . And Agent Long interviewed him, and you know he asked him was it Richard Bear Runner, but they [the government] didn't bring Alex Thunder [Hawk] to court, did they?

Docket 49 at 45.

During rebuttal argument the prosecutor gave the following response:

> Ladies and gentlemen, with reference to the fact that the defense never has the burden, ever – and that is repeated over and over in the jury instructions, that you can never, in your deliberations, put the burden nor can we put the burden on the defendant to do anything at trial. But I would proffer to you that they had the material, the discovery from this, all of the witness statements of the people that [defense counsel] listed that we didn't call to this trial. I would proffer that he also has subpoena power. He doesn't have to exercise it.

Docket 49 at 59. Defense counsel objected based on burden shifting. The court directed the prosecutor to "move to a different area." Docket 49 at 59. Now Bear Runner argues this was improper burden shifting that so affected or prejudiced his case that he did not receive a fair trial.

Bear Runner had no burden to call any witnesses. The court's instructions made that clear, and the prosecutor said as much immediately prior to her comment about Bear Runner's subpoena power, which lessened any potential impropriety or prejudice. *See United States v. Kenyon*, 481 F.3d 1054, 1066 (8th Cir. 2007) (noting that prosecutorial statements were not improper, "particularly where the prosecutor prefaced his remarks by acknowledging that Kenyon had 'no obligation to subpoena any witness or present any evidence.' "). Moreover, the Eighth Circuit has "previously held that when a defendant attacks the government's failure to call certain witnesses and suggests that those witnesses might have exonerated him, then the government may point out that the defendant also had the power to subpoena witnesses." *Id.*

The court finds that defense counsel did suggest to the jury that these uncalled witnesses may have helped exonerate Bear Runner. Therefore, the prosecutor's statement was a fair response to defense counsel's closing argument. While the prosecutor's method for responding may have skirted the borders of propriety, the circumstances lessen the severity. This conduct does not rise to the level of prosecutorial misconduct.

Defense counsel objected to two further arguments made by the prosecutor during rebuttal. Bear Runner claims these actions also were improper and warrant a new trial. The first instance occurred when the prosecutor stated, "With a grudge, not only does there require the feelings, the feelings of not being happy with somebody, but then there is the action. And that's where the theory that's been brought forth to you fails." Docket 49 at 61.

12

Defense counsel objected on burden-shifting grounds, and the court overruled the objection.

Bear Runner argues that the prosecutor's comments unfairly and prejudicially placed the burden upon him. The court does not agree. Bear Runner's theory of the case was that all of the witnesses who testified against Bear Runner did so because they are part of White Eyes's family, which allegedly carries a grudge against Bear Runner because White Eyes lost custody of their children. It is permissible, however, for the prosecutor to attempt to discredit Bear Runner's theory of the case and to comment on her own interpretation of the evidence. *See United States v. Jewell*, 614 F.3d 911, 928 (8th Cir. 2010) ("It is not improper for the government to comment on its interpretation of the evidence."). The prosecutor's comment did not insinuate that Bear Runner had to offer a theory of the case or that he had to prove his version of the facts, merely that his explanation or theory of the evidence at trial was contrary to fact or evidence. Therefore, this comment was not improper.

Next, Bear Runner asserts that the prosecutor's comment about there being "zero evidence" in the record of White Eyes drinking shifted the burden of proof to him. The prosecutor specifically stated:

> What it would imply is that this action was taken because of a grudge, and I would proffer to you that that is not something that is logical. That is not something that common sense would show what happened, that being upset with somebody about something would cause you to do this to yourself in order to get them in trouble. Ladies and gentlemen, there was zero evidence that Christine White Eyes was drinking on September 6th of 2012. Actually there was evidence to the contrary.

Docket 49 at 61. The defense attorney objected on burden-shifting grounds and asked for a standing objection. The court overruled the objection, but granted the continuing objection request.

The court does not find this evidence to be improper or burden-shifting information. Defense counsel asked a number of questions or made comments that suggested White Eyes may have been drinking on the night of the assault. The prosecutor was attempting to discredit or dispute that assertion. The only evidence related to White Eyes drinking was her and other witnesses' testimony that she had a drinking problem in general. Long also testified that Bear Runner told him that "Christine was drunk all of the time" during Long's initial interview with Bear Runner. This evidence is not enough for the court to conclude that the prosecutor's comment that there was "zero evidence" of White Eyes drinking on the night of the assault was contrary to the record or improper burden shifting when the comment was the prosecutor's interpretation of the evidence.

II. **Prejudice**

Having found that the prosecutor made improper comments during her rebuttal argument, the court must determine if Bear Runner was unfairly prejudiced by those comments. Prejudice is measured by "the cumulative effect of the misconduct, the strength of the properly admitted evidence, and any curative actions taken by the district court." *United States v. Montgomery*, 635 F.3d 1074, 1097 (8th Cir. 2011) (citation omitted). Ultimately, the question the court examines is whether the prosecutor's comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "

14

*United States v. Mullins*, 446 F.3d 750, 757 (8th Cir. 2006) (citation omitted). The court should not be quick to overturn a criminal conviction based on a prosecutor's improper comments standing alone, but "the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Jumping Eagle*, 515 F.3d 794, 806 (8th Cir. 2008).

While Bear Runner objected to eight comments or questions by the prosecutor during trial that are now at issue, the court only sustained objections to four of those comments. The court has now found that two of the remarks were improper in a prosecutorial misconduct analysis. The improper comments were made during the most critical and potentially damaging phase of the trial, during the prosecutor's rebuttal argument when Bear Runner had no chance to respond. *See United States v. Holmes*, 413 F.3d 770, 776 (8th Cir. 2005) ("The potential for prejudice is great during closing arguments, especially when the defense has no opportunity for rebuttal."). The remainder of the prosecutor's rebuttal argument properly responded to topics raised by defense counsel or properly interpreted the evidence before the jury. After viewing all the trial evidence and the entirety of the closing arguments, the court finds the cumulative effect of the remaining improper comments was slight.

The prosecutor's conduct was improper, but the tipping point is that the case cannot be classified as a "close call" because the government offered substantial evidence of guilt. White Eyes testified that she had been in a relationship with Bear Runner for many years, and he had been violent to her in

15

the past. Bear Runner and White Eyes had separated recently. On the evening of the assault, White Eyes testified that she actually saw her attacker and identified him as Bear Runner. Also on the evening of the assault, Ryan High Bear, White Eyes's brother, heard her being attacked. High Bear testified that he heard White Eyes yell, "Stop it, Richard!" And immediately after High Bear heard White Eyes yell, he ran outside and saw White Eyes lying wounded on the ground. Both Herman Dubray and Shawn Tail testified that they witnessed some part of the assault, and each witness identified Bear Runner as the assailant.

There was substantial evidence of Bear Runner's intent or motive to cause White Eyes harm. A number of witnesses testified, including a law enforcement officer who was not a member of White Eyes's family, that prior to her assault they heard what they recognized to be Bear Runner's voice leaving threatening voice mails that were intended for White Eyes. These voice mails included threats that Bear Runner was going to send White Eyes to the ICU and saying he was going to kill her. The government also introduced evidence of a number of prior incidents where law enforcement was called to investigate instances of domestic violence by Bear Runner towards White Eyes. In particular, the government submitted a video where Bear Runner admitted to a police officer that he had hit White Eyes on a number of occasions. Finally, when Long first interviewed Bear Runner about White Eyes's assault, Bear Runner began by asking, "Is this about Christine?" This is substantial evidence of guilt.

Moreover, prejudice was minimal because the jury was properly instructed on its duties and the burden of proof in a criminal case. Although the court did not take curative action immediately after defense counsel made the majority of his objections[2] or when Bear Runner requested a mistrial, much of the danger of prejudice was still cured. By the time the improper comments were made the jury already had been instructed that "[a]s with opening statements, closing arguments are not evidence." Docket 43 at 20. The Eighth Circuit has stated that an "instruction that closing arguments are not evidence is a curative action that serves to alleviate any risk of prejudicial impact." *Jumping Eagle*, 515 F.3d at 806. The jury had this preliminary instruction during its deliberations and was told in final instructions that "**[a]ll** instructions, whenever given and whether in writing or not, must be followed." Docket 46 at 2. For these reasons, the threat of prejudice from improper statements during closing argument was minimized.

The jury also was instructed on the burden of proof in both the preliminary and final jury instructions, which reduced any prejudice from burden-shifting arguments. In final instructions, jurors were reminded that the burden of proving Bear Runner's guilt beyond a reasonable doubt "never, ever shifts to the defendant to prove his innocence." Docket 46 at 12. Jurors were

---

[2] The court did give a curative instruction immediately following defense counsel's objection during the prosecutor's direct examination of Long. After the prosecutor attempted to have Long state whether Long believed Thunder Hawk's testimony and Long stated "No, I didn't," the court told the jury to disregard Long's response. This immediate instruction curbed any substantial prejudice.

instructed that the defendant did not have to call witnesses, produce evidence, testify, or cross-examine witnesses. *Id.* The Eighth Circuit has routinely reiterated that "jurors are presumed to follow the court's instructions." *United States v. Patterson*, 684 F.3d 794, 799 (8th Cir. 2012). Because these curative actions lessened the chances of prejudice to Bear Runner's case, a mistrial is not appropriate.

**CONCLUSION**

While the government did engage in improper conduct during closing arguments, the prosecutor's misconduct did not affect Bear Runner's substantial rights or prejudice his case in front of the jury. The court finds the cumulative effect of the misconduct was not so severe as to permeate the entire trial, the government presented substantial evidence of Bear Runner's guilt, and the court's preliminary and final instructions cured any prejudice. Under the facts of this case, a mistrial is not warranted, the jury's verdict will stand, and Bear Runner's motion for a new trial is denied. Accordingly, it is

ORDERED that Bear Runner's motion for a mistrial and new trial (Docket 53) is denied.

Dated July 23, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE